IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

PHIL LABOON,  EYEFLOW INTERNET  )
MARKETING LLC,                  )
                                )        2:25-CV-01548-MJH
                                )
        Plaintiffs,             )
                                )
                                )
    vs.                         )
                                )
                                )
SERVICE CONCIERGE LLC,  P50     )
DIGITAL LLC, CEM OSMA, JENNA
DONEGAN, SHANELL NESBIT,

        Defendants,

OPINION

Plaintiffs, Phil Laboon and Eyeflow Internet Marketing LLC, brings the within action against Defendants, Service Concierge LLC, P50 Digital LLC, Cem Osma, Jenna Donegan, and Shanell Nesbit, for an alleged scheme to gain access to Plaintiffs' confidential information and trade secrets. (ECF No. 1).

Plaintiffs' Complaint asserts claims  for breach of fiduciary duty (Count I) against Cem Osma; for breach of contract (Count II) against Service Concierge LLC, P50 Digital LLC, and Cem Osma; for violations of the Federal Defend Trade Secrets Act (Count III), Pennsylvania Uniform Trade Secrets Act (Count IV), and the Computer Fraud and Abuse Act (Count V) against all defendants; unjust enrichment (Count VI) against all defendants; tortious interference with prospective contractual relations (Count VII) and unfair competition (Count VIII) against Service Concierge LLC, P50 Digital LLC, and Cem Osma; and conversion (Count IX) against all defendants.  Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  (ECF Nos. 12, 22, and 31).  These matters are now ripe for decision.

Upon consideration of Defendants' Motions (ECF Nos. 12, 22, and 31), the respective briefs and submissions (ECF Nos. 26, 32, 36, 37, and 38-2), and for the following reasons, Defendants' Motions will be denied.

I.    Background

    A.  Complaint Allegations

Plaintiffs operated a business generating leads for T-Mobile sub-affiliates and providing sales leads through partnerships with call centers. (ECF No. 1 at ¶ 12).   Following a sub-affiliate's bankruptcy, Plaintiffs partnered with P50 Digital LLC (managed by Cem Osma) to form a new entity, Service Concierge, LLC. *Id*. at ¶ 13.  Service Concierge, P50 Digital and Cem Osma primarily operate call centers.  *Id*. at ¶ 15.  Plaintiffs allege that Cem Osma, or one of his companies, employed Ms. Nesbit and Ms. Donegan.  *Id*. at ¶ 16.

On October 21, 2024, Plaintiffs and P50 Digital executed a dissolution agreement to end their partnership. *Id*. at ¶ 19.   Plaintiffs alleged that that Osma and P50 Digital compelled Plaintiffs to grant administrative access to business accounts. *Id*. at ¶ 21.  Plaintiffs aver that, Defendants used said administrative access to download and steal Plaintiffs' entire T-Mobile lead database.  *Id*. at ¶ 22.

    B.  Jurisdictional Assertions

As regard the individual defendants, the Complaint alleges that Ms. Donegan resides in Illinois[1], Ms. Nesbit resides in Arizona, and Mr. Osma resides in Florida.  (ECF No. 1 at ¶¶ 5, 6, and 7).  As regard the LLC entities, the Complaint alleges that Service Concierge is a Delaware company with a principal place of business in Florida, and that P50 Digital LLC is a Florida company with principal place of business in Florida.   *Id*. at ¶¶ 3 and 4. The Complaint does not

---

[1] In a declaration attached her motion to dismiss, Ms. Donegan asserts that she resides in Tennessee.

allege that any Defendants are incorporated in, reside, or have a principal place of business in Pennsylvania.

Cem Osma asserts that he, P50, and Service Concierge had access to ordinary business information during the joint venture with Eyeflow.  (ECF No. 13-1 at ¶ 13). Further, Osma asserts that any such information was maintained electronically by a third party on servers outside of Pennsylvania. *Id.*  Ms. Donegan and Ms. Nesbit have denied accessing or having access to the T-Mobile database and only handled inbound sales calls during the relevant time period.  (ECF No. 32-1).

Plaintiffs assert that Both Donegan and Nesbit were granted login credentials to Eyeflow's HighLevel CRM system as standard users. (ECF No. 33-1 at ¶¶ 56, 48M; Ex. AA). In November 2024, Plaintiffs assert that, after Mr. Osma obtained administrative access, he upgraded both Ms. Donegan and Ms. Nesbit to administrative access. *Id*. at  ¶¶ 57, 64. With administrative access, Plaintiffs assert that Ms. Donegan and Ms. Nesbit had complete control over Eyeflow's Pennsylvania-based lead database and the ability to perform bulk exports of all lead data.  *Id*. at ¶¶ 58-E, 65-E.

II.      Relevant Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to challenge a Court's exercise of personal jurisdiction. "Once a defendant challenges a court's exercise of personal jurisdiction over it, the plaintiff bears the burden of establishing personal jurisdiction." *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102* (3d Cir. 2009) (citing G*en. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). Plaintiff need only to establish a prima facie case for personal jurisdiction over the defendant to overcome a 12(b)(2) motion. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Plaintiff must

demonstrate, by a preponderance of the evidence, that personal jurisdiction exists. *Heinrich v. Serv. Corp. Int'l*, 2009 WL 2177229 at *1 (W.D. pa. July 22, 2009). "[I]n reviewing a motion to dismiss under Rule 12(b)(2) [the court] 'must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff.'" *Pinker v. Roche Holdings*, 292 F.3d 361, 368 (3d Cir. 2002) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992)). A resolution of factual issues may be required to establish personal jurisdiction under a 12(b)(2) motion and thus a party may introduce extrinsic evidence beyond the pleadings to do so. *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 (3d Cir. 1984).

III.     Discussion

The Supreme Court recognizes two types of jurisdiction: (i) general (or "all-purpose") and (ii) specific (or "case-linked"). *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773, 1779– 80 (2017).

1.  General Jurisdiction

With regard to general jurisdiction, the United States Supreme Court has held:

court may exercise general jurisdiction only when a defendant is "essentially at home" in the State. General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant. Those claims need not relate to the forum State or the defendant's activity there; they may concern events and conduct anywhere in the world. But that breadth imposes a correlative limit: Only a select "set of affiliations with a forum" will expose a defendant to such sweeping jurisdiction. In what we have called the "paradigm" case, an individual is subject to general jurisdiction in her place of domicile. And the "equivalent" forums for a corporation are its place of incorporation and principal place of business.

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (internal citations omitted).

Here, the parties do not contend that any of the Defendants are "at home" in Pennsylvania. As regard the individual defendants, the Complaint alleges that Ms. Donegan

4

resides in Illinois[2], Ms. Nesbit resides in Arizona, and Mr. Osma resides in Florida.  (ECF No. 1 at ¶¶ 5, 6, and 7).  As regard the LLC entities, the Complaint alleges that Service Concierge is a Delaware company with a principal place of business in Florida, and that P50 Digital LLC is a Florida company with principal place of business in Florida.  *Id*. at ¶¶ 3 and 4. The Complaint does not allege that any Defendants are incorporated in, reside, or have a principal place of business in Pennsylvania.  Therefore, neither the parties nor the Court have a basis to confer general jurisdiction upon Defendants.  Accordingly, the Court will confine its primary personal jurisdiction analysis to specific jurisdiction.

2.  Specific Jurisdiction

Defendants argue that Plaintiffs' Complaint has not established specific jurisdiction. Specifically, Defendants contend that the Complaint offers no factual allegations that demonstrate:  Defendants purposely directed any activities toward Pennsylvania, or Plaintiffs' claims arise out of or relate to any Pennsylvania-directed conduct by Defendants.

Plaintiffs maintain that defendants utilize a business model that relied entirely on Pennsylvania-based personnel, systems, vendors, and infrastructure.   Plaintiffs argue Defendants deliberately accessed Plaintiff's Pennsylvania-based computer systems under false pretenses, misappropriated Pennsylvania-originated proprietary data and business relationships, and downloaded Pennsylvania-housed confidential data worth approximately two million dollars. As a result of Defendants' alleged conduct, Plaintiffs assert they, as a Pennsylvania-based business and its owner, suffered financial harm.

In response, Defendants maintain that Plaintiffs' alleged trade secrets were stored on "Eyeflow's HighLevel CRM system," which used cloud-based servers that were not located in

---

[2] In a declaration attached her motion to dismiss, Ms. Donegan asserts that she resides in Tennessee.

Pennsylvania. (ECF No. 33 at 12 and 32; ECF No. 33-1 ¶¶ 56-57; and Ex. 1, ¶¶ 3-4).   Ms. Nesbitt and Ms. Donegan also deny having sufficient computer access to retrieve any of Plaintffs' alleged trade secrets.

When the plaintiff brings an intentional tort claim, the Supreme Court, in *Calder v. Jones*, provided a specific personal jurisdiction test that applies to intentional tort claims—often referred to as the *Calder* effects test. 465 U.S. at 783.  "[T]he *Calder* 'effects' test requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory, Inc.*, 114 F.4th 181, 187 (3d Cir. 2024).

Because trade secret misappropriation claims sound in intentional tort, such claims easily satisfy the *Calder* effects test's first prong. *See, e.g., GEICO v. Nealey*, 262 F. Supp. 3d 154, 163–66 (E.D. Pa. 2017). As for the second prong, trade secrets are located, so to speak, in the state where their owner resides. *See Paolino v. Channel Home Ctrs.*, 668 F.2d 721, 721 n.2 (3d Cir. 1981). So, a corporate plaintiff feels the brunt of the harm from misappropriation "in the states where the trade-secret owner is incorporated or headquartered." *GEICO*, 262 F. Supp. 3d at 166; *see also, e.g., Eddie Kane Steel Prods., Inc. v. Ala. Plate Cutting Co.*, No. 18-cv-15167, 2019 WL 3281623, at *5–6 (D.N.J. July 19, 2019).

To establish *Calder*'s third and final prong, "the defendant must manifest behavior intentionally targeted at and focused on" the forum state. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)) (internal quotation marks omitted). In other words, "the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum." *Id*. at 266. To do so, the plaintiff must "point to specific activity

6

indicating that the defendant expressly aimed its tortious conduct at the forum." *Id*. Without these intentionality restrictions, *Calder* would always allow the plaintiff to sue in its home state. *See id*. at 264–66. In a trade secret case, this prong is met, "to the extent that defendants misappropriated the trade secrets of [plaintiff] in violation of [statute], this conduct was 'expressly aimed' at causing harm to an entity which defendants knew was headquartered in Pennsylvania." *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 632 (E.D. Pa. 2015). Therefore, under this analysis, defendants would know the harm from misappropriation would occur in Pennsylvania. *Id*.

Here, the Plaintiffs' Complaint and declarations meet their burden to establish specific personal jurisdiction through the *Calder* test.  First, Plaintiffs have alleged that Defendants committed intentional torts through trade secret misappropriation, tortious interference with prospective contractual relations, and conversion.  *See* ECF No. 1 at Counts III, IV, V, VII, and IX.

Second, at the relevant times, Mr. Laboon was a resident of Pennsylvania and Eyeflow is a Pennsylvania LLC with its principal place of business in Pennsylvania.  Therefore, Plaintiffs' alleged trade secrets would have been located in Pennsylvania, because that is where Eyeflow is incorporated and where Mr. Laboon resides.  Defendants' argument, that the trade secrets were located in a cloud server outside of Pennsylvania, is immaterial to the *Calder* analysis.  Instead, as cited above, the *Calder* focus is the location of the trade secret owner and not the location of the trade secret.  *See e.g. Cabot Corp. v. Niotan, Inc.*, 08-CV-01691, 2011 WL 4625269, at *13 (E.D. Pa. Sept. 30, 2011) ( "[B]ecause a trade secret cannot have a physical situs, the state of residence of the person or entity that developed and protected the secret is the place where the trade secret also resides.").

Third, Plaintiffs have sufficiently pleaded that they suffered harm as a result of the theft of the alleged trade secrets.   Plaintiffs have also asserted that Defendants knew that Plaintiffs resided and operated from Pennsylvania.   Therefore, Plaintiffs have sufficiently met their burden under the *Calder* test that the Defendants directed their activities into Pennsylvania.  Thus, having met the three prongs of the *Calder* analysis, Plaintiffs can maintain specific jurisdiction over Defendants.  Finally, the remaining arguments by Ms. Donegan and Ms. Nesbit, denying participation in the theft of trade secrets, are merit-based defenses that will ultimately be determined through discovery and potentially witness credibility.  Therefore, at this stage, where the Court must construe disputed facts in favor of Plaintiff, Plaintiffs have sufficiently met their burden to establish specific jurisdiction over defendants.

IV.      Conclusion and Order

Following consideration of the foregoing and for the reasons stated in the Opinion, Defendants' Motions to Dismiss for lack of personal jurisdiction are denied.   Defendants shall file their Answer on or before May 22, 2026.

DATED this 8th day of May, 2026.

BY THE COURT:

MARILYN J. HORAN
United States District Judge

8